UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


JOHN BETTENCOURT,             )
       Plaintiff            )
                             )
vs.                         )        CIVIL ACTION NO.: 05-30179-MAP
                             )
THE TOP-FLITE GOLF COMPANY,   )
       Defendant       )


**OPPOSITION TO DEFENDANT'S MOTION
TO STRIKE THE AFFIDAVIT OF PAUL DUVAL**


Now comes the Plaintiff, John Bettencourt, and opposes the Motion to Strike the

Affidavit of Paul Duval.

Defendants have filed a motion to strike the affidavit of Paul Duval contending that Mr.

Duval would not have personal knowledge of the facts contained in it.

The subject matter at issue in Paragraph 3 of Mr. Duval's affidavit is background

information regarding the history of the defendant and its predecessor.  The defendant, in its

submission on Summary Judgment has claimed materiality and relevance for this subject matter.

Apparently, the defendant contends in some part, that each of the four employees who have

brought these actions were members of an unsuccessful and unprofitable company prior to

Callaway's arrival, and that Callaway, therefore, was justified in terminating them and hiring

individuals who it had regarded as having been part of successful organizations.  Plaintiff believes

the relevancy of this information is moderate at best and that this is not the reason for the

termination of any of the four plaintiffs.  However, given that defendant has presented information

about the prior failure of Spalding and takeover by Callaway, the Plaintiff is compelled to point

out those matters which it considers to be legitimately in dispute on this subject. Spalding's prior

success is in some sense obvious. It had existed for decades and its downfall only came after the

KKR purchase. Mr. Duval's information indicates that the Company had been operationally

profitable until it had to meet the debt burden created by the KKR purchase.

There is no reason to strike Mr. Duval's affidavit. Mr. Duval held significant

positions in the company and had been employed by the Company for decades. As a high level

employee, even if he was not a part of the OCM, Mr. Duval had been informed of the Company's

financial status as part of his job. It does not follow that he had no first hand knowledge of

Company finances simply because he was not a member of senior management. The Defendant

states that Mr. Duval's job duties did not require him to review Company financial records

without any citation to any information in the record that would show that. Because of this

challenge to Mr. Duval's affidavit, Mr. Duval has submitted a second affidavit explaining that in

fact, as part of his job, he was shown Company financials and had access to the information that is

at issue. (Exh. A)

The other information in Paragraph 3 regarding Spalding's sell off of other

divisions is clearly based both on Mr. Duval's knowledge from the position he held at Spalding at

the time, and the fact that he is now employed by Russell Athletic which took on the employees at

issue. Even the Defendant concedes that he has personal knowledge of this. The affidavit does

not purport to apply to layoffs unrelated to that transaction.

The Defendant's objection to Paragraph 5 of Paul Duval's affidavit is meaningless.

Defendant's contend that Mr. Duval is commenting on the testimony of another witness, Jamie

Bosworth, and presenting a view on the accuracy of the witness's testimony. All Mr. Duval did in

Paragraph 5 is state that it was his understanding that Mr. Bosworth claimed that he had had

certain discussions with Mr. Duval concerning what Mr. Bosworth viewed as problems in his job performance.  No one disputes that Mr. Bosworth raised this in his testimony.  Mr. Duval denies such discussions occurred.  He certainly has every right to deny it when Mr. Bosworth never said this to him.  The defendant does not dispute that Mr. Bosworth testified to this, so there is no reason to question Mr. Duval's understanding of Mr. Bosworth's testimony.  (See e.g., Exh. 4, pp. 26-31)   In any event, the fact that a witness states that another party's witness, who claims to have made a statement or taken some action with respect to him, did not make that statement or take that action, is perfectly competent testimony and the objection is frivolous.

      For these reasons, the motion should be denied.

THE PLAINTIFF, JOHN BETTENCOURT
BY HIS ATTORNEY


Dated: March 9, 2007

  / S / Maurice M. Cahillane
Maurice M. Cahillane, Esq.
EGAN, FLANAGAN AND COHEN, P.C.
67 Market Street - Post Office Box 9035
Springfield, MA 01102
(413) 737-0260; Fax: (413) 737-0121
BBO# 069660


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Opposition to Defendant's Motion to Strike the Affidavit of Paul Duval was served this 9th day of March, 2007 on all parties, by electronic filing to Jay M. Presser, Esq., Skoler, Abbott & Presser, 1 Monarch Place, Springfield, MA 01144

  / S / Maurice M. Cahillane

12085-050157\131247.wpd

# EXHIBIT A

# AFFIDAVIT OF PAUL DUVAL

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL DUVAL,                          )
          Plaintiff                  )
                                     )
vs.                                  )        CIVIL ACTION NO.: 05-30181-MAP
                                     )
                                     )
THE TOP-FLITE GOLF COMPANY,          )
          Defendant                  )

## AFFIDAVIT OF PAUL DUVAL

Paul Duval, being duly sworn, states as follows:

1.    My name is Paul Duval and I am the plaintiff in the above captioned case.

2.    I previously signed an affidavit in this matter on January 16, 2007. That affidavit
concerned information about the finances of Top Flite Golf Company and its predecessor,
Spalding, both of which I have worked for.

3.    The information contained in my affidavit of January 16, 2007 is information of which I
do have personal knowledge. The amount listed in Paragraph 3 as $850,000.00 should be
$850,000,000.00.

4.    I served as the Manager and later as Director of Sales Planning for the Domestic Division,
both before and after the Spalding bankruptcy. The profitability of both companies was a
subject that was discussed on a regular basis in sales, marketing and financing meetings.
As the Manager and later Director of Sales Planning, my responsibilities included the
forecasting of top line sales by item, resulting gross margin dollars, and trade fund
expenditures required to support the sales. These are all line items on the monthly profit
and loss statements generated by the Finance Department. The profit and loss statement
was a tool we used to measure how we were performing. It compared the financial plan
to prior year to actual result and forecast on a monthly and annual basis. The profit and
loss statement was the key document in measuring profitability on an operational level.
Whereas top line sales were important, focus was always directed additionally to
managing expenses and cash flow. The most important line on the profit and loss
statement was the bottom line, otherwise known as EBIT (Earnings Before Interest and
Taxes). This was used as the measure of profitability. Both before and after the
bankruptcy, this was a crucial and primary measure of tracking our financial performance
against our expectations, and it was information which was presented to me, and to which
I had access.

5.     This information which I received in meetings is the basis for the affidavit which I filed on January 16, 2007.

Signed under the pains and penalties of perjury this ___9___ day of March, 2007

Paul Duval