UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL BEHAYLO,<br>                Plaintiff,<br>-and-<br>JOHN BETTENCOURT,<br>                Plaintiff,<br>vs.<br>CALLAWAY GOLF BALL OPERATIONS, INC.,<br>                Defendant. | CIVIL ACTION NO. 05-30178-KPN<br><br><br>CIVIL ACTION NO. 05-30179-KPN |

## **DEFENDANT'S OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

**Instruction No. 1, 2**

While Plaintiff's proposed Instruction No. 1 & 2 are not inappropriate, Defendant believes its proposed instructions are more complete, are more in line with First Circuit precedent and will provide better guidance for the jury.

**Instruction No. 3**

As the First Circuit Court has recently stated, under the ADEA, the Plaintiff has the "ultimate burden of proving that his years were *the* determinative factor in his discharge, that is, that he would not have been fired but for his age." Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 15 (1st Cir. 2007). Instructions on the ultimate issue should follow that language.

**Instruction No. 4**

Defendant objects to the Plaintiff's Proposed Jury Instruction No. 4 on the ground that it is confusing and will be difficult to follow by the jury. Because this instruction encompasses the underlying issue in this case, *i.e.,* whether the Defendant intentionally discriminated against the Plaintiff, the instruction given to the jury should not stray far from the applicable standard annunciated by the court. In Reeves v. Sanderson Plumbing Products, Inc., the Supreme Court stated:

> [w]hen a plaintiff alleges disparate treatment, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. That is, the plaintiff's age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome.

530 U.S. 133, 141 (2000) (*internal citations omitted*); *see also* Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 15 (1st Cir. 2007) (Under the ADEA, the Plaintiff has the "ultimate burden of proving that his years were *the* determinative factor in his discharge, that is, that he would not have been fired but for his age.") (*citations omitted, emphasis added*).

**Instruction No. 5**

While Plaintiff's proposed Instruction No. 5 is generally not inappropriate, Defendant believes its proposed instructions are more complete, more in line precedent and will provide better guidance for the jury. The instruction standing alone, *i.e.*, without instructions that the jury must focus on the decision at the time, and the like, would be misleading and confusing as to whether "changes" that occurred later must result in a finding of pretext.

**Instruction No. 7**

Defendant objects to Plaintiff's Proposed Jury Instruction No. 7 insofar as it instructs the jury on a "similarly situated employee" inference. The last sentence of this instruction allows the jury to draw inferences from and consider "whether similarly situated younger employees were treated more favorably than older employees with regard to layoffs" without providing any guidance on what constitutes "similarly situated."

This instruction misstates the standard regarding the "similarly situated" inference in federal employment discrimination cases. In Bennett v. Saint-Gobain, this court stated that for a similarly situated inference to be permissible, "the employees must be similar in terms of performance, qualifications, conduct, and any other relevant characteristics or circumstances." 453 F. Supp. 2d 314, 328-29 (D. Mass. 2006); *see also* Rodrigues-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999) (employees must be "similarly situated in all material respects.").

A jury may not simply compare any random younger employees to any random older employees, and then infer that this Plaintiff was discriminated against. For such inference to be allowed, the Plaintiff must show that *this Plaintiff* was treated differently than a substantially younger employee who is similarly situated *in all material respects*. *See id.*; *see also* Bennett, 453 F. Supp. 2d at 329 (employee being compared to Plaintiff must be "substantially younger"). In other words, the Plaintiff must show that the Defendant laid off the Plaintiff, while at the same time chose not to lay off a substantially younger employee that was working in that same position, that was subject to the same terms of performance, had the same qualifications (*i.e.,* education, experience, training), that had a similar history with the company, etc. It would be error to allow the jury to

draw an inference of discrimination with regard to this Plaintiff in a disparate treatment case where the Plaintiff merely shows that some older employees were laid off and some younger employees were not.

Further, Defendant is unaware that the Plaintiff has even identified a "similarly situated individual" allegedly treated more favorably. There is no evidence to that effect presented through summary judgment, and none is anticipated.

**Instruction No. 8**

Defendant objects to Plaintiff's Proposed Jury Instruction No. 8 insofar as it misstates the required elements of the Plaintiff's *prima facie* case in an age discrimination case. The Defendant makes no objection as to the first three elements as stated by the Plaintiff; however, the Defendant takes issue with the fourth.

According to the Plaintiff's Instruction, the forth element of the *prima facie* case requires the Plaintiff to prove "that there was a continuing need for the services provided by the position for which he was discharged or that age was not treated neutrally in the decision to lay him off." That is the appropriate standard in a termination case, such as <u>Zades v. Lowe's Home Centers, Inc.</u>, 446 F. Supp. 2d 29, 37 (D. Mass. 2006). However, this case involves a reduction in force, where there is often a continuing need for the service, but a need to reduce costs. This distinction results in a different fourth prong, as was noted in the very First Circuit decision cited by Plaintiff. Thus, <u>Currier v. United Technologies Corp.</u>, 393 F.3d 246, 254 (1st Cir. 2004) clearly states:

> [i]n the context of a RIF, he must show that he was at least 40 years old; that his job performance met his employer's reasonable expectations; that he experienced an adverse employment action; **and that younger persons were retained in the same position or that the employer otherwise did not treat age neutrally.**"

*(emphasis added)*; *see also*, Goldman v. First Nat. Bank of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993) (using the term "replaced"); Pages-Cahue v. Iberia Lineas Aereas de Espana, 82 F.3d 533, 536 (1st Cir. 1996) ("(4) that Iberia did not treat age neutrally or retained younger persons in the same position."); Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995) (same); O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-313 (1996).

In O'Connor, the court was asked, "what elements must be shown in an ADEA case to establish the *prima facie* case…." Id. at 311. The court answered by stating, "the *prima facie* case requires, *evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion*.…" Id. at 312 *(emphasis in original) (internal citations omitted)*. The court then stated that such an inference could be created by showing that "a replacement is substantially younger than the plaintiff…." Id.; *see also* Williams v. Raytheon Co., 220 F.3d 16, 20 (1st Cir. 2000).

The Defendant also submits that its "replacement" language is more in line with a Reduction in Force case under the ADEA, such as we have here. Whether or not the Defendant has a "continuing need for the services provided by the position for which he was discharged," without more, simply does not create an inference that its decision to lay him off was based on a discriminatory criterion, as required by O'Connor. A "continuing need" for the Plaintiff's services with no subsequent attempt to replace the Plaintiff merely shows that the Plaintiff made a business decision to eliminate the Plaintiff's position, and such decisions may not be questioned by the court or a jury. To draw a permissible discriminatory inference, the Defendant must have filled or

affirmatively sought to fill those needed services with a replacement. Without this "replacement" link, the inference is significantly weakened.

Therefore, by giving an instruction based on a "continuing need" for the Plaintiff's services rather than on obtaining a "replacement", the court is allowing the jury to draw an impermissible inference of discrimination.

**Instruction No. 10**

Defendant objects to Plaintiff's Proposed Jury Instruction No. 10 because it incorrectly states the standard for determining a "replacement" in the First Circuit, and it incorrectly states the Plaintiff's burden under the ADEA.

The definition of "replacement" in the First Circuit is much narrower than Instruction No. 10 would convey to the jury. The First Circuit articulated its replacement standard for RIF cases in LeBlanc v. Great American Ins. Co., where it stated

> [a] discharged employee is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. Rather, a person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

6 F.3d 836, 846 (1st Cir. 1993) (*internal citations omitted*). The court has further elaborated on this standard by stating, "[w]hen the functions of a furloughed employee are absorbed into the responsibilities of existing employees, who perform these duties along with their own, no legally cognizable 'replacement' occurs." Cruz-Ramos v. Puerto Rico Sun Oil Co., 202 F.3d 381, 384 (1st Cir. 2000).

Under this standard, therefore, it would be incorrect to state, as the Plaintiff does in Instruction No. 10, that a replacement can be found where the "jobs being compared have similar functions and titles" and "[i]t is sufficient if those absorbing the employee's

duties are younger than the Plaintiff." The real question is whether the purported replacement is doing *only* the Plaintiff's work or instead whether he/she does the Plaintiff's duties "along with their own" or "in addition to other duties" or if they are "already performing related work." Id.; LeBlanc, 6 F.3d at 846.

Further, the Plaintiff's Instruction No. 10 incorrectly instructs the jury that upon finding that the Plaintiff was replaced, "[t]he plaintiff has satisfied *his case*…." (*emphasis added*). A finding that the Plaintiff was replaced merely satisfies the Plaintiff's *prima facie* case, thus creating an inference of discrimination. Informing the jury that such a finding will satisfy the Plaintiff's *case* may potentially confuse the jury into believing the Plaintiff has satisfied his overall burden of proving intentional discrimination merely by proving that the Plaintiff was replaced.

**Instruction No. 12**

Defendant objects to Plaintiff's Proposed Jury Instruction No. 12. In particular, the Defendant objects to the third sentence of that instruction, which states: "In another [sic] words, if the employer knew that age discrimination was illegal and you have found that age was one of the reasons for the termination, then you must find that the action was willful."

In determining willfulness under the ADEA, the Supreme Court has adopted the following standard: "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Hazen Paper Company v. Biggins, 507 U.S. 604, 614 (1993) (*quoting* Trans World Airline, Inc. v. Thurston, 469 U.S. 111, 126 (1985)). Although the Plaintiff correctly uses this standard elsewhere in its instruction, the third sentence is much broader that what the Supreme Court would

consider "willful". The third sentence comports more to the broad "in the picture" standard that the Supreme Court has twice rejected. Id.

The mere fact that an employer "knew" that age discrimination was unlawful does not constitute "willfulness" under the ADEA. See Thurston, 469 U.S. at 126 ("We are unpersuaded by Respondents' argument that a violation of the [ADEA] is 'willful' if the employer simply knew of the potential applicability of the ADEA."); see also Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 721-722 (1st Cir. 1994). As the court stated in Thurston, this would subject every employer found liable under the ADEA to liquidated damages because it is common knowledge to employers, through required postings, that age discrimination is unlawful. Id.

Something more is needed. Mere knowledge that age discrimination is unlawful combined with age being a motivating factor in the Plaintiff's layoff broadens the liquidated damages portion of the ADEA effectively eliminating the "two-tiered liability scheme" that Congress envisioned under the statute. Biggins, 507 U.S. at 614. As such, Defendant requests that the court instruct the jury with language that more clearly draws this distinction, such as:

> [a] finding that the Defendant violated the Age Discrimination in Employment Act does not automatically mean that the Defendant willfully violated the Act. A willful violation cannot occur by accident, inadvertence, ordinary negligence, or through a good faith mistake. To find a willful violation, Plaintiff must prove by a preponderance of the evidence that the Defendant knew that it was subject to the Age Discrimination in Employment Act and voluntarily proceeded in the face of that knowledge to engage in conduct which it knew might violate the Act, or that the Defendant acted in reckless disregard of the Act.

See Defendant's Proposed Jury Instruction on Willfulness; see Sanchez , 37 F.3d at 722 (1st Cir. 1994) ("episodic violations of the ADEA in disparate treatment cases need not automatically lead to the imposition of liquidated damages").

**Instruction No. 13**

Defendant objects to Plaintiff's Proposed Jury Instruction No. 13 insofar as it relates to the calculation of benefits in any potential back pay award given by the jury. The instruction directs the jury to include in any back pay award "all other financial benefits to which [Plaintiff] would have been entitled… ." However, this standard is inconsistent with the underlying purpose of the ADEA as well as several other Circuit Court decisions that have dealt with the issue of benefits.

A Plaintiff's back pay award should not include the "value" of all benefits, especially health insurance, that were offered to the Plaintiff and paid by the Defendant.[1] To begin with, the Plaintiff should not be entitled to a benefit that was merely offered by the Defendant and not taken by the Plaintiff, *e.g.,* where the Plaintiff did not elect to be covered by the Defendant's health insurance during his employment. Awarding the Plaintiff a benefit that he affirmatively rejected and was not actually benefiting from while he was employed by the Defendant would make the Plaintiff more than whole, which flies in the face of the "make whole" purpose of ADEA damages. See Kolb v. Goldring, Inc., 694 F.2d 869, 872 (1st Cir. 1982) ("[ADEA] [d]amages are meant to put the plaintiff in the economic position he would have occupied but for the discrimination.") (*citations omitted*). Also, where a Plaintiff was not only declining the Defendant's benefits, but was in fact receiving similar benefits from another source, *e.g.,* obtaining health insurance through one's spouse, the Plaintiff would be receiving a "windfall," which the court generally seeks to avoid under the ADEA. Erie County Retirees Association v. County of Erie, 166 F. Supp. 2d 310, 311 (W.D. Penn. 2001)

---

[1] The Defendant will be analyzing this issue in more detail through a motion that will be filed with the Court before trial.

(awarding damages without factoring in post-termination insurance benefits would create a "windfall").

However, even assuming the jury determines that the Plaintiff is entitled to a back pay award, that amount should not include health insurance benefits that were offered to and paid by the Defendant, regardless of whether the Plaintiff elected such coverage. Several sister courts dealing with the issue, have found that a Plaintiff may not recoup the Defendant's cost of providing insurance to the Plaintiff in a back pay award under the ADEA. *See, e.g.,* Pearce v. Carrier Corp., 966 F.2d 958, 959 (5th Cir. 1992) ("ADEA claimant is limited to recovery of those expenses actually incurred by either replacement of the lost insurance or occurrence of the insured risk."); Kossman v. Calumet County, 800 F.2d 697, 703-04 (7th Cir. 1986) (Including the cost of insurance coverage in a backpay award when the victim of discrimination fails to secure alternative coverage allows the victim to recover an unwarranted windfall unless he or she can demonstrate that they were unable to secure coverage and had a medical expense), *overruled on other grounds*, Coston v. Plitt Theatres, Inc., 860 F.2d 834, 835-36 (7th Cir. 1988); Erie County Retirees Association v. County of Erie, 166 F. Supp. 2d 310, 311 (W.D. Penn. 2001) (awarding damages without factoring in post-termination insurance benefits would create a "windfall"); McKelvy v. Metal Container Corp., 674 F. Supp. 827, 832 (M.D. Fla. 1987), *aff'd in part on other grounds and vacated in part on other grounds*, 854 F.2d 448 (11th Cir. 1998); Merkel v. Scovill, Inc., 570 F. Supp. 141, 146 (S.D. Ohio 1983) ("to include the amount of the insurance premiums in the back-pay award would make plaintiffs more than whole."); Galindo v. Stoody Co., 793 F.2d 1502, 1517 (9th Cir. 1986) ("lost insurance coverage, unless replaced or unless actual

expenses are incurred, is simply not a monetary benefit owing to the plaintiff."). Therefore, the Plaintiff should only be entitled to recover his replacement costs, if any, or any loss that resulted from being uninsured.

**Instruction No. 17**

The Defendant objects to Instruction No. 17 in its entirety. Instruction No. 17 involves the issue of "front pay", and it directs the jury to calculate this measure of damages. However, under the ADEA in this circuit, front pay is awarded by *the court* not the jury. Kelley v. Airborne Freight Corp., 140 F.3d 335, 354 (1st Cir. 1998) ("Within federal employment discrimination law, front pay is generally an equitable remedy awarded by the court, while, under ch. 151B, the jury awards front pay.") (*internal citations omitted*); Lussier v. Runyon, 50 F.3d 1103, 1108 (1st Cir. 1995); Wildman v. Lerner Stores Corp., 771 F.2d 605, 616 (1st Cir. 1985); Dominic v. Consolidated Edison Co. of New York, Inc., 822 F.2d 1249, 1257 (2d 1987); Currier v. United Technologies Corp., 326 F. Supp. 2d 145, 158 (D. Me. 2004), *aff'd* 393 F.3d 246 (1st Cir. 2004). Although under M.G.L. ch. 151B some state statutes allow a jury to decide the issue of front pay damages, *see* Handrahan v. Red Roof Inns, Inc., 680 N.E.2d 568, 576 (Mass. App. 1997) (M.G.L. ch. 151B), the First Circuit keeps front pay calculations under the ADEA within the equitable discretion of the trial judge. See Kelly, 140 F.3d at 354; Wildman, 771 F.2d at 616; Currier, 326 F. Supp. 2d at 158. Therefore, because the Plaintiff's claim is based solely on federal law under the ADEA, the court should not instruct the jury on the issue of front pay.

```
                                        Respectfully Submitted,


                                         /s/ Jay M. Presser, Esq.
                                        Jay M. Presser, Esq.
                                        BBO #405760
                                        Counsel for Defendant
                                        Skoler, Abbott & Presser, P.C.
                                        One Monarch Place, Suite 2000
                                        Springfield, Massachusetts  01144
Dated:   February 11, 2008              Tel. (413) 737-4753/Fax (413) 787-1941
```

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendant's, Objections to Plaintiff's Proposed Jury Instructions* was served upon the attorney of record for each other party, via hand delivery on February 11, 2008.

```
                                         /s/ Jay M. Presser, Esq.
                                        Jay M. Presser, Esq.
```