UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL BEHAYLO<br><br>                              Plaintiff,<br><br>vs.<br><br>CALLAWAY GOLF BALL<br>OPERATIONS, INC.,<br><br>                              Defendant.<br><br>*Consolidated For Trial With*<br><br>JOHN BETTENCOURT<br><br>vs.<br><br>CALLAWAY GOLF BALL<br>OPERATIONS, INC.,<br><br>                              Defendant. | CIVIL ACTION NO. 05-30178-KPN<br><br>CIVIL ACTION NO. 05-30179-KPN<br><br>**DEFENDANT'S MOTION TO<br>PRECLUDE TESTIMONY OR<br>ARGUMENTS REGARDING<br>SENIORITY; REPLACING MORE<br>EXPENSIVE EMPLOYEES WITH LESS<br>EXPENSIVE EMPLOYEES;<br>STATEMENTS PURPORTING TO SHOW<br>BIAS IF MADE BY INDIVIDUALS<br>OTHER THAN THE DECISION MAKER<br>OR INDIVIDUAL IN POSITION TO<br>INFLUENCE DECISIONMAKER;<br>AMBIGUOUS STATEMNTS;<br>AND ANCEDOTAL "ME TOO"<br>EVIDENCE REGARDING THE LAYOFF<br>OF OTHER EMPLOYEES** |

## I.  Introduction

The Defendant, Callaway Golf Ball Operations, Inc. (f/k/a The Top-Flite Golf
Company), submits this Motion in Limine to preclude the admission of certain evidence
as either irrelevant to the individual claims of age discrimination and/or, even if
potentially relevant and material, unfairly prejudicial to the Defendant.  Covered by this
Motion is testimony of, or statements about:

   1)    alleged derogatory statements related to length of service or seniority or
        the failure of the Defendant to consider the employees seniority when
        effectuating the layoff;

1

2)    Defendant alleged replacement of higher salaried individuals with lesser
       paid employees;

3)    alleged ageist statements by individual other than those made by the
       decisionmaker or by an individual with authority to influence the relevant
       decisionmaker (including, but not limited to, any statements made by
       James Bosworth, in any trial other than the one in which he was the
       decisionmaker);

4)    ambiguous alleged statements that are more prejudicial than probative of
       age discrimination, such as references to "deadwood" or an analysis of
       the high cost of absenteeism in the factory;

5)    anecdotal evidence from a select few of the hundreds of employees
       asserting that they too were unfairly laid off and mistreated when included
       amongst the hundreds laid off ("me too" evidence), including especially
       "me too" evidence relating to the reduction-in-force in Field Sales,
       inasmuch as Plaintiffs all worked in the Chicopee, Massachusetts office,
       not the Field Sales, where layoff decisions would implicate issues that are
       wholly irrelevant to this case.

An individual age discrimination case turns upon proof that the decisionmaker
who made the disputed decision harbored and acted based on discriminatory animus.[1]
Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31 (1st Cir. 2007) ("Actionable
discrimination cannot exist in a vacuum. Rather, the discriminatory intent of which a

---

[1] An exception, not applicable here, exists when a neutral decisionmaker is actively misled by another manager with a discriminatory bias. *See,* Cariglia v. Hertz Equipment Rental Corp., 363 F.3d 77, 86 (1st Cir. 2004). None of the decisionmakers here acted upon facts provided by others possessing a discriminatory motivation.

plaintiff complains must be traceable to the person or persons who made the decision to fire him.").[2]  *See also,* Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 16 -17 (1st Cir. 2007) ("When assessing a claim of pretext in an employment discrimination case, a court's focus is necessarily on the motivations and perceptions of the decisionmaker. Thus, as long as the Station believed that the appellant's performance was not up to snuff-and the appellant has presented no evidence suggesting that management thought otherwise-it is not our province to second-guess a decision to fire him as a poor performer. That is true regardless of whether, to an objective observer, the decision would seem wise or foolish, correct or incorrect, sound or arbitrary.").  *See* Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 12 (1st Cir. 2007); *see also* Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991) (explaining that "courts may not sit as super personnel departments, assessing the merits ... of employers' nondiscriminatory business decisions").  For a quondam employee to withstand summary judgment in an age discrimination case, there must be some significantly probative evidence from which the factfinder can infer that the employer discharged the employee because of his age.  *See* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47, 120 S. Ct. 2097 (2000) ("Proof of pretext may give rise to such an inference; proof of a mistaken judgment does not.").  It is against this backdrop that the evidentiary rulings should be considered.

---

[2] "'While relevant evidence of a general atmosphere of discrimination may "color" a claim, "[p]roof of a general atmosphere of discrimination is not the equivalent of proof of discrimination against an individual,' Sweeney v. Board of Trustees of Keene State College, 604 F.2d 106, 113 (1st Cir.1979)."  Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 249 (1st Cir. 1997).

1.     **All Evidence and Statements Related to Defendant's Failure to Consider Employee Seniority or Derogatorily Comments Regarding Seniority or Length of Service are Wholly Irrelevant and, Even if Relevant, Unfairly Prejudicial.**

There is no dispute that the employer did *not* consider seniority when implementing the layoffs in dispute.  There should also be no dispute that, as a matter of law, there is no obligation to do so, and that the failure to do so simply is not evidence of age discrimination.

For the same reasons, alleged derogatory references to the value of seniority, or assertions that Andrew Kelleher indicated that he didn't care about the individual's employment history prior to 2003[3], when Defendant was formed, is not at all relevant to proving a claim of age discrimination.  The fact that a supervisor, or indeed the company, does not place any value on seniority, or even harbors an antipathy towards it, may show discrimination based on "seniority," however as a matter of law, it does not, as both the Supreme Court and reality teaches[4], tend to prove discriminatory conduct *based on age.*  Thus, such comments would be wholly irrelevant and inadmissible.

The Supreme Court has definitively held that the concepts of age and an employee's years of service are "analytically distinct," and thus "it is incorrect to say that

---

[3] Indeed, such evidence would imply that the Company, for these purposes, *should* have considered the time that employees had worked for Spalding, before that company went bankrupt.  Thus, all these employees had only started to work for this employer in September 2003.  The failure to consider "seniority," or comments that seniority did not matter, simply indicate that the Company is ignoring, or denigrating, time spent working for the bankrupt company.

[4] Thus, as to the cost accounting selection, Levandowski had less seniority than either Bettencourt or Behaylo.  He was older than both.  A claim that seniority should have been honored, applied in that case, would mean that the oldest cost accountant should have been terminated rather than younger, more senior cost accountants.  The distinction between seniority and age could not be clearer than it is in this situation, and should not be blurred by arguments or testimony that would be offered for the clear purpose of encouraging the jury to consider the failure to consider seniority as evidence of age discrimination.

a decision based on years of service is necessarily 'age based.'" Hazen Paper

Company v. Biggens, 507 U.S. 604, 611 (1993). Indeed, as a matter of law, a company

simply is entitled to ignore seniority. *See* Tice v. Lampert Yards, Inc., 761 F.2d 1210,

1217 (7th Cir. 1985) (the ADEA "does not place an affirmative duty upon an employer to

accord special treatment to members of the protected age group" ... and "was not

intended to legislate seniority rights where none exist in the contract of employment")

(*quoting* Williams v. General Motors Corp., 656 F.2d 120, 129-130 n.17 (5th Cir. 1981)).

The same rationale can be applied equally to other factors commonly lumped together

with age, such as an employee's salary, experience and qualifications. *See* Soto v.

Corporation of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints, 73 F.

Supp. 2d 116, 129 (D. P. R. 1999) (citing cases). Thus, neither evidence of an

antipathy to seniority, nor the fact that seniority was not considered, is at all probative of

age discrimination.

      Beyond such evidence being irrelevant, it would inevitably raise a serious risk of

jury confusion, which the court should take pains to avoid. Thus, respectfully, before

Hazen many courts, including this one, had confused the issues of years of service or

seniority, or the vestiges of such seniority, with age discrimination. Indeed, it would be

expected that less sophisticated jurors could easily fall into the same trap, particularly if

they are led by testimony and arguments of Plaintiff's counsel, thereby blurring the

distinction between age discrimination and a failure to give more senior (in terms of

years of service) employees preference during a reduction-in-force. That confusion,

following Hazen, should be avoided. Accordingly, all statements relating to seniority,

experience, qualifications, and salary should be excluded from evidence at trial as

lacking any probative value toward any factual issues in this case and being likely to confuse the jury. Fed. R. Ev. 401, 402.

In addition to lacking any probative value, and the fact that the testimony would likely cause jury confusion, such statements are unfairly prejudicial to Defendant and should be excluded under Rule 403. Such evidence can only serve to inflame one or more jurors, who may believe that companies in general, or this Defendant in particular, _should_ honor seniority when implementing a reduction-in-force. Indeed, many if not most jurors have probably worked in an environment that treats seniority as a factor to be considered during a layoff.[5] The court's role is to prevent irrelevant facts from inflaming a jury or encouraging jurors to decide cases based upon factors that the Supreme Court itself has found is not a proper basis for an age discrimination finding. Allowing such evidence or argument would not prove age, but would likely inflame and mislead the jury into focusing on the purported "fairness" of the fact that the employer did not consider seniority, or even had an antipathy to those who had long service with the bankrupt company. Such statements rather than assisting the jury in deciding the actual issue in the case, which is whether *age* (not seniority) played a role in the decision, would blur the critical distinction between age and seniority, and be a blatant appeal for the jury to award damages based on the Plaintiff's seniority. Neither the court nor juries are allowed to serve as super personnel agencies under the guise of determining whether age discrimination occurred. Allowing such testimony would encourage just such overreaching. Therefore, the court should preclude the Plaintiffs from offering statements relating to seniority or length of service with the company, as

---

[5] Thus, Union collective bargaining agreements, civil service laws, and other workplace policies by some employers make seniority a major, if not determinative factor, in considering who to layoff in a reduction-in-force.

their probative value, if any, is substantially outweighed by the danger of unfair

prejudice and jury confusion under Rule 403.

2.    **References to Defendant Replacing More Expensive Employees with Less Expensive Employees As Unlawful Should Be Precluded As Irrelevant, and if Relevant, Unfairly Prejudicial.**

There is evidence that subsequent to the layoff of John Bettencourt and Michael

Behaylo, some of their duties were later assumed by Sharon Lally, who was paid

substantially less than either Plaintiff, much less both.[6]  Although Defendant denies that

this was part of a planned cost savings effort to replace higher paid individuals with less

expensive personnel, Plaintiff's counsel should be precluded from arguing or asserting

that doing so is evidence of age discrimination.  While such testimony is likely to inflame

jurors, who may believe that it *should* be unlawful to reduce costs in such a fashion, as

a matter of law, the assertion is simply wrong.  *See, e.g.*, Sperling v. Hoffmann-La

Roche, 924 F. Supp. 1396, 1405 (D.NJ. 1996) ("[i]f Employer fired him because of his

high salary … does not state a cause of action for which relief can be granted under the

ADEA.").  In Sperling, *supra*, the district court noted since that subsequent to the

Supreme Court's decision in Hazen Paper Company v. Biggins, 507 U.S. 604, 113 S.

Ct. 1701, 123 L. Ed. 2d 338 (1993), "while, on average, those workers with the highest

salaries are older workers, high salary and age are nonetheless analytically distinct, and

therefore, termination decisions based on the employee's level of compensation are not

violative of the ADEA."  Id.  See also, Thomure v. Phillips Furniture Company, 30 F.3d

1020, 1024 (8th Cir. 1994) (stating that the defendant could 'take account of one [salary]

while ignoring the other [age]' ... even though there happened to be a correlation

---

[6] Defendant does not know if Plaintiff intends to introduce such evidence in the trial of the other Plaintiffs.  Such me too evidence should be excluded, but if it is not, this argument is equally applicable in those cases.

between the two in several cases"), *cert. denied*, 513 U.S. 1191, 115 S. Ct. 1255, 131 L. Ed. 2d 135 (1995); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1125-26 (7th Cir. 1994) (noting that Hazen's "rationale applies with equal force to cases where workers are discharged because of salary considerations"); Chiano v. Dimension Molding Corporation, 1993 WL 326687 *2 n.3 (N.D. Ill. August 25, 1993); Bornstad v. Sun Company, Inc., 1993 WL 257310 *2 (E.D. Pa. June 28, 1993) (*citing*, Hazen Paper for the proposition that "equat[ing] alleged seniority cost-saving motivation with age discrimination" is an approach that is "no longer viable"), *aff'd*, 19 F.3d 642 (3d Cir. 1994) (TABLE); Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 117 (2d Cir. 1991) ("there is nothing in the ADEA that prohibits an employer from making employment decisions that relate to an employee's salary to contemporaneous market conditions and the responsibilities entailed in particular positions and concluding that a particular employee's salary is too high[,]" even though "high salary and age may be related").

Thus, even if one were to ignore the time delay, reorganizing staffing so as to replace relatively high paid employees with lesser paid entry employees is not an indication that age discrimination rather than costs savings motivated the decisions. *See, e.g.,* Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982) cited with approval in Pages-Cahue v. Iberia Lineas Aereeas De España, 82 F.3d 533, 538 (1st Cir. 1996). No testimony or argument should be permitted to blur that distinction or imply that efforts to reduce costs are akin to age discrimination.

3.     **Ambiguous Statements (including references to deadwood), and Comments by Someone Other than the Individual Making the Decision At Issue, Should Be Precluded.**

As noted, the issue in this case is whether the individual making the decision chose the Plaintiff based on age.  Evidence that is not probative of that issue, but merely attempts to portray that decisionmaker, or other managers, as "unlikeable" for some other reason is both irrelevant and unfairly prejudicial and should be precluded.

In making evidentiary rulings the court can, of course, allow evidence that *actually* tends to demonstrates a general atmosphere *of age discrimination* in order to "color" the individual claim.  However, in assessing both relevance and the potential of undue prejudice of such statements, the court must determine if the statements are actually probative of an atmosphere of age discrimination, or merely evidence intended to make the jury perceive that one or more decisionmaker is callous.  Even if the putative evidence is probative of such a general atmosphere, the court must then balance the value of the "color" being added to the case against the likelihood that irrelevant, or minimally relevant evidence might either unfairly inflame the jury with extraneous considerations, or encourage them to act as super-personnel departments rather than simply determining if the employer acted as it did due to age.

Thus, in making evidentiary rulings the court should exclude any and all statements that may anger the jury regarding the employer's personnel practices which do not actually demonstrate an atmosphere of discrimination *based on age*.  Such statements are both wholly irrelevant and highly prejudicial.  This, as discussed below, would include the alleged comments by a manager (including potentially the decisionmaker in question) that merely denigrate seniority or long service employees

9

but do not even tend to prove age discrimination or an atmosphere of age.  Beyond that, the court should preclude testimony of ambiguous statements, especially ambiguous statements made by a non-decisionmaker.

Thus, for example, Andrew Kelleher and James Bosworth are alleged to have made references to "deadwood."  As noted below, such comments are ambiguous *at best.*  Defendant submits that the court should disallow *all* such statements.  However, even if, for example, the court allows testimony regarding the alleged ambiguous statement by Kelleher to be admitted in the case judging the legality of *his* decision, such ambiguous statements should not be admitted in the trial aimed at judging, for example, the motivations of Tom Fry, who is not alleged to have made any similar statement.  Thus, there is no evidence that Fry ever heard the alleged statement by Kelleher much less that the alleged statement, made by someone with no control over Fry, actually influenced his decision.  Similarly, as discussed below, nothing said by James Bosworth, who first came to Defendant after the April 2004 layoffs were announced could have influenced either Kelleher or Fry's *prior* decisions.

While evidence of the alleged statements by the President may be admissible as having influence on his subordinates other ambiguous statements by non-decision makers do not fall in the same category.  Thus, the court must also be mindful that "[t]he biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case."  *See,* Thomas v. Eastman Kodak Co., 183 F.3d 38, 64 (1st Cir. 1999), *citing*, Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990).  Ambiguous statements by individuals other than the decisionmaker or his superior, (*i.e.,* Robert Pennicka) should not be admitted to prove

the bias a decisionmaker other than the speaker of the ambiguous comment.[7]  *See, e.g.,* Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1330 (6th Cir. 1994) ("In age discrimination cases, this court has examined statements allegedly showing employer bias by considering whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the act of termination. However, this court has not previously expressly spelled out these considerations as a formal standard. We do so today." ).  Allowing in ambiguous statements by non-decision makers is unfairly prejudicial.  *See, e.g.,* Greenfield v. Sears, Roebuck and Co., 2006 WL 2927546, *7  (E.D. Mich. 2006), *citing,* Krohn v. Sedgwick James of Michigan, Inc., 244 Mich. App. 289, 303 (2001) ("The risk of admitting evidence of a biased opinion made by an employee who is unrelated to the decisionmaking process is that, even if the remark is isolated, ambiguous, or remote in time, it unfairly suggests to the jury that the remark and its underlying motivation have the imprimatur of the employer.").

Each case should focus on the decisionmaker, and not allow testimony and counter testimony regarding ambiguous statements by individuals not involved in the disputed decision.  Thus, Kelleher should not have to appear at the trial of Paul Duval to

---

[7] Thus, for example, even if Andrew Kelleher was in a position to influence the decision of Tom Fry, which he was not, his references to deadwood could only have any relevance if Fry himself interpreted the comment as ageist, and not, as did the Sixth Circuit Court, merely a reference "…to people who just are not working hard."  Strickland v. Federal Express Corp., 45 Fed. Appx. 421, 425, 2002 WL 2026385, **4 (6th Cir. 2002).  Thus, an ambiguous statement by the decisionmaker arguably can demonstrate bias by that decisionmaker, who will be in court to explain the statement.  That same statement cannot, however, demonstrate bias by others.  Nor should the court allow such evidence, which would inevitably require Defendant to call repeatedly the speaker to testify about the alleged statements, in trials involving individuals whose terminations he played no role in.

explain the circumstances of any "deadwood" reference he made.  Even more obvious, the statement of Richard Levandowski, a non-decisionmaker _in any of the cases_, should be precluded from all the cases.

Thus, Levandowski, a cost accountant, testified that as part of his job duties, the finance department periodically reviewed the costs associated with Defendant's relatively high absenteeism amongst its hourly workforce.  Reviewing the data, and based upon studies he had read, he concluded that the high absenteeism amongst the factory employees was merely reflective of a relatively older factory workforce, and that there was nothing that could be done to reduce such expenses.  Not only did this testimony not pertain to office employees, the testimony clearly indicates that the Company simply concluded that such higher costs were simply a cost of doing business, and that no action was therefore appropriate.  There is no claim that any action was ever taken to reduce such age related costs, or to lower the ages in the factory.  The age of the workforce may be noted as the explanation for a higher than expected operating cost.  It does not "tend to prove" that there was a pattern of age discrimination, or that any decision was based on age.  Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 5, 691 N.E.2d 526, 529 (Mass., 1998) (evidence of employer attempts to contain or reduce workers' compensation claims not probative of handicap discrimination).  Accordingly, the testimony regarding the routine study of the hourly workforce should be precluded in each case.

While it is all the more obvious when the ambiguous statement is made by the non-decisionmaker, the court should also preclude introduction of any statement, even

the decisionmaker[8], that are merely ambiguous, since the value of such evidence is outweighed by its potential prejudicial effect.  Such statements, include any and all alleged references to "deadwood," which are just as "likely" to have a non-age related connotation.  *See, e.g.,* Strickland v. Federal Express Corp., 45 Fed. Appx. 421, 425, 2002 WL 2026385, **4 (6th Cir. 2002) ("Deadwood" likely refers to people who just are not working hard.").  *See also* Gartland v. Hermetic Seal Corp., 1990 WL 127529, *2 (D. Mass., 1990) ("Plaintiff further charges that Wong said at one staff meeting, in the context of discussing the reorganization of the sales team, that "we should get bright young people in," and on another occasion that he wanted to "get rid of deadwood."  In the context of a company, which admittedly is in the throes of serious financial difficulties, these statements, even if considered collectively, do not suggest that the election of plaintiff for termination was discriminatory.").  At most such comments are ambiguous, and ambiguous statements do not prove an atmosphere of age discrimination.  *See,* Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 583 (1st Cir. 1999) (noting that "a statement that plausibly can be interpreted two different ways-one discriminatory and the other benign-does not *directly* reflect illegal animus") (emphasis added).  *See also,* Pearson v. City of Manhattan, 33 F. Supp. 2d 1306, 1315 (D. Kan. 1999) (holding that phrase "old ways" not evidence of ADEA age-based animus, as such terms "apply more to a person's state of mind than to a person's age"); Martin v. Ryder Distribution Res., Inc., 811 F. Supp. 658, 664 (S.D. Fla. 1992)

---

[8] Defendant concedes, of course, that the decisionmaker will be testifying at the trial pertaining to his decision, so the additional vice of requiring additional witnesses to deal with minimally relevant ambiguous statements is not present when the ambiguous statements are by the decisionmaker himself.  Thus, Defendant would concede that an ambiguous statement by Andrew Kelleher would involve somewhat different considerations in the Bettencourt/Behaylo trial than it would in the related trials of Gary Lonczak or Paul Duval, whose selection for layoff did not involve Kelleher.

(observing that simple references to the plaintiff-employees-as "good old boys" and "old-fashioned"-are insufficient evidence of age-based animus under ADEA), *aff'd*, 16 F.3d 1232 (11th Cir. 1994).

Moreover, even if the court believes that such ambiguous statements may be susceptible to an interpretation that adds "color" to the dispute, making them arguably relevant, the benefit of adding such color is far outweighed by the undue prejudice that they can cause.  Thus, such seemingly derogatory comments, while not truly probative of age discrimination[9], would clearly intend to inflame the jury against the speaker for reasons unrelated to putative age discrimination.

4.    **Any Alleged Statements Made by James Bosworth are Irrelevant and Unfairly Prejudicial to Defendant**.

The court should preclude the Plaintiffs from offering into evidence in any trial involving the April 2004 layoffs any and all evidence related the statements allegedly made by James Bosworth.  Such statements were general, ambiguous comments and were, in fact, made long after the Plaintiffs' terminations by a manager who was not employed at the time they were laid off.  *See* Fed. R. Ev. 401 and 402.

Plaintiffs Behaylo, Bettencourt, and Lonczak were notified of their layoffs, decided upon their respective managers, in mid-April 2004.  Mr. Bosworth did not begin to work for Defendant until *after* those layoffs.  Thus, not only was Mr. Bosworth not the decisionmaker with regard to the decision to layoff those three plaintiffs, he was not even employed by the Defendant when the decision to terminate them was made that forecloses the argument that Mr. Bosworth could have had even the slightest influence on the decision being questioned herein.  Mr. Bosworth's statements, regardless of their

---

[9] Indeed, Bettencourt testified that when Kelleher made the statement he made it clear that he was not referring to Bettencourt himself.

content, lack any probative value in these cases.  Fed. R. Ev. 401.

Even if this court were to find some arguable relevance in Mr. Bosworth's statements with regard to the Plaintiffs terminated in April 2004, and the Defendant strongly maintains that there is none, any probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.  Fed. R. Ev. 403.  The alleged statements could result in a jury disliking Bosworth, and having such dislike prejudice this case although his subsequent statements and/or conduct obviously did cause Kelleher to discriminate against Plaintiffs before he had even met Bosworth.  Therefore, the danger of unfair prejudice and jury confusion substantially outweigh any probative value that Mr. Bosworth's statements would have and should be precluded under Rule 403.

5.    **The Plaintiffs Should be Precluded from Introducing Any "Me Too" Evidence at Trial as it is Irrelevant and Highly Prejudicial to the Defendant**.

Plaintiff may intend to introduce so-called "me too" evidence at trial and should be precluded from doing so under Rule 402 and Rule 403.  "Me too" evidence is evidence relating to other employees who claim to have been discriminatorily treated by the Defendant and its supervisors.  Thus, the circumstances surrounding David Richardson's and Richard Geiglow's terminations are clear examples of this type of evidence, as are the circumstances surrounding the several hundred other employees that were let go by Defendant.

Through their pretrial submissions, it appears that Plaintiffs intend to introduce evidence relating to Mr. Richardson and Mr. Geiglow, but this Motion would include an objection to any and all evidence of others claiming that they too were victims of age discrimination.  This would include "me too" testimony by the plaintiffs in the related

cases.  Thus, there is no statistical evidence that the layoffs actually targeted older workers, and indeed the workforce got slightly older by virtue of the April layoffs.

This is not even evidence reflecting a pattern of discrimination by a supervisor in a particular grouping.  Rather, in the face of corporate-wide reductions affecting hundreds, Plaintiff seek to have a few people testify that they too believe that they were discriminated against *by other decision makers!*[10]

The Defendant strongly maintains that "me too" evidence is irrelevant and unduly prejudicial to its case.  Several courts that have dealt with the issue would find such evidence irrelevant on its face and inadmissible under Rule 402,[11] while others exclude such evidence under Rule 403.[12]  The First Circuit has indicated that such evidence "should be let in sparingly" and only "…after the trial court considers the evidence in light of the entire case and determines whether it provides a basis for reasonable inferences related to the plaintiff's claim."  Cummings v. Standard Register Co., 265 F.3d 56, 63 (1st Cir. 2001).

The events surrounding Mr. Richardson's and Mr. Geilow's termination are completely irrelevant to the layoffs that occurred in April 2004.  These terminations occurred well after the April 2004 layoffs and the decision was made by Mr. Bosworth

---

[10] This is not the case regarding Paul Duval to the extent he seeks, for example, the testimony of Dave Richardson.  However, as discussed below, the me too testimony being preferred comes from individuals who worked in Field Sales.  Allowing such evidence would inevitably lead to a significant detour as the explanations of the methodology for consolidation in field sales, where Duval did not work, would become a focal point of the trial, diverting from the real issue.

[11] *See* Haskell v. Kaman Corp., 743 F.2d 113 (2d Cir. 1984); Wyvill v. United Companies Life Ins. Co., 212 F.3d 296 (5th Cir. 2000); Williams v. Nashville Network, 132 F.3d 1123 (6th Cir. 1997); Moorhouse v. Boeing Co., 501 F. Supp. 390 (E. D. Pa. 1980), *aff'd*, 639 F.2d 774 (3rd Cir. 1980).

[12] *See* Schrand v. Federal Pacific Electric Co., 851 F.2d 152 (6th Cir. 1988); Hunter v. Allis-Chalmers Corp., 797 F.2d 1414 (7th Cir. 1986).

who, again, was not even working for Defendant when the April 2004 layoffs occurred.
Moreover, even as to Duval's case, both Mr. Richardson and Mr. Geilow were working
in entirely different positions working in Field Sales, not the office. *See* <u>Wyvill</u>, 212 F.3d
at 302 ("testimony from former employees who had different supervisors than the
plaintiff, who worked in different parts of the employer's company, or whose
terminations were removed in time from the plaintiff's termination cannot be probative of
whether age was a determinative factor in the plaintiff's discharge."*); see also* <u>Schrand</u>,
851 F.2d at 156.

Going off on a tangent regarding changes in Field Sales will focus the jury's
attention on unrelated events and distract its attention away from the true issue in the
case. *See* <u>Schrand v. Federal Pacific Elec. Co.</u>, 851 F.2d 152, 156 (6th Cir. 1988).

Finally, introducing "me too" evidence poses a serious risk that a "trial within a
trial" will ensue over the other claims of discrimination raised against the Defendant.
*See* <u>Wyvill</u>, 212 F.3d at 303.

Indeed, it appears that Plaintiff may intend to introduce testimony from each
Plaintiff in the trial of the remaining plaintiffs. This would result substantially in the same
kind of prejudice that the court sought to avoid when it declined to consolidate the case
based in large part on in any event, "…the real possibility of prejudice to Defendant."[13]
(Court Order February 5, 2008). Indeed, in the absence of any evidence of a pattern of
discrimination in the layoffs, Plaintiff seeks to put anecdotal evidence from a handful of
individuals contesting their own layoffs. Claims by a relative handful of individuals in the

---

[13] Of course, the question of me too evidence is being taken up by the United States
Supreme Court. *See* <u>Sprint/United Management Co. v. Mendelsohn</u>, 466 F.3d 1223 (10th Cir.
2006), *cert. granted,* __ U.S. __, 127 S. Ct. 2937, 168 L. Ed. 2d 261 (June 11, 2007).

Chicopee Office, where Plaintiff worked out of, more than 125 individuals that were laid off should not be allowed to divert the trial.[14]  Even if one or two others within that large number were actually discriminated against by their managers, it would not be probative that unlawful reasons actually motivated this particular employment decision.

Similarly, it appears that Plaintiff may intend to introduce witnesses who were not even amongst those laid off in the Chicopee, Massachusetts office, where Plaintiff worked, but rather were assigned to the Field Sales Office.  Between 2004 and 2005, over 121 individuals assigned to Field Sales separated, for a various reasons, including cost reductions.  Testimony from a few isolated individuals that believe that they were unfairly terminated would not tend to show discrimination even in the layoffs in Field Sales, much less discrimination in the Chicopee office.  Moreover, Field Sales layoffs are of necessity controlled by considerations significantly different than those in the office, and substantial testimony would necessitate substantial testimony as to the reasons for those terminations, testimony that would not shed light on the Chicopee, Massachusetts layoffs.  Thus, Consolidation of field sales territories and personnel requires consideration of such factors as geographic proximity of other salesman who would be retained, sales figures, relationships with customers, etc., that are irrelevant to the reasons for the layoff of any of the actual plaintiffs.  In short, the introduction of such testimony would require substantial testimony of additional witnesses regarding layoffs, effectuated based on different considerations.  Such mini-trials might ultimately require more jury time to "defend" than the trial of the actual plaintiff.  It will involve testimony of

---

[14] That many are designated as being "laid off" on the company database.  Additional employees in the office had been notified of their layoff, but found other jobs prior to their anticipated layoff date, resulting in their separation being designated a voluntary quit in the database.  This information was all presented to Plaintiff during discovery.

those other employees, the decisionmaker for such layoffs, and perhaps others to delve

into the legitimacy of their own layoffs, diverting the jury from the real issue at hand.

Therefore, the Plaintiffs should be precluded from offering any "me too" evidence under

Rule 402 or Rule 403 as it is irrelevant and unduly prejudicial to the Defendant.

Respectfully submitted,

  /s/ Jay M. Presser, Esq.
Jay M. Presser, Esq.
BBO No. 405760
Counsel for Defendant
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts  01144
Dated:  February 19, 2008    Tel.:  (413) 737-4753/Fax:  (413) 787-1941

<u>CERTIFICATE OF SERVICE</u>

        I hereby certify that a true and accurate copy of the foregoing Defendant's Motion
to Preclude Testimony or Arguments Regarding Seniority; Replacing More Expensive
Employee with Less Expensive Employees; Statements Purporting to Show Bias if
Made by Individuals Other than the Decisionmaker or Individual in Position to Influence
Decisionmaker; Ambiguous Statements; and Anecdotal "Me Too" Evidence Regarding
the Layoff of Other Employees was served upon the attorney of record for each other
party via electronic filing, on February 19, 2008.

  /s/ Jay M. Presser, Esq.
Jay M. Presser, Esq.